IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| GARY LEE FOX, §<br>Institutional ID No. 02317467, §<br>SID No. 50815386, §<br>  §<br>Plaintiff, §<br>  §  Civil Action No. 1:21-CV-00029-BU<br>v. §<br>  §<br>BOBBY LUMPKIN, *et al.*, §<br>  §<br>Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Gary Fox filed this action under 42 U.S.C. § 1983 on February 2, 2021, complaining that he was exposed to COVID-19 at the Texas Department of Criminal Justice (TDCJ) John Middleton Unit. Dkt. No. 1. The Court granted Fox leave to proceed *in forma pauperis*, which subjects his Complaint to the Court's preliminary screening measures under 28 U.S.C. § 1915(e)(2)(B). Dkt. No. 5. And because Fox, an inmate, brings his suit against government officials, his Complaint is also subject to screening under 28 U.S.C. § 1915A. The case was transferred to the undersigned to conduct the required preliminary screening. Dkt. No. 6. Fox has not consented to the undersigned magistrate judge exercising the full jurisdiction of this Court, and thus the undersigned submits these Findings, Conclusions, and Recommendations for the dismissal of his claims. *See id.*

I.     PRELIMINARY SCREENING

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a

1

claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing FED. R. CIV. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (emphasis added). This means the factual allegations, while not required to be detailed, must amount to more than mere labels,

conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–79). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## II.   FACTUAL SUMMARY

Fox makes vague references to "policies" that resulted in him being exposed to COVID-19 at the Middleton Unit. *See* Dkt. No. 1. On or about October 6, 2020, Fox was allegedly placed in a dorm with over a dozen inmates who tested positive for COVID-19. *Id.* at. 4. Additionally, Fox alleges that prisoners were: (1) forced to share the same bathroom space; (2) housed with inmates who tested positive for COVID-19; (3) issued only "thin cloth masks"; (4) not given hand sanitizer or gloves; (5) fed out of a food cart by inmates from other quarantine dorms who did not wear gloves; and (6) subjected to the same ventilation. Dkt. No. 11 at 5. Fox also alleges that staff did not follow proper PPE or sanitization and was "not properly trained." *Id.* at 9, 11. Fox concedes that he never tested positive for COVID-19 during the relevant time and has only suffered "mental anguish." Dkt. No. 11 at 2, 12.

## III.   DISCUSSION AND ANALYSIS

Fox names the following individuals as Defendants: (1) Bobby Lumpkin, TDCJ CID Director; (2) Benny Bundy, TDCJ Middleton Unit Warden; (3) Bryan Collier, TDCJ Executive Director; and (4) Gregg Abbott, Governor of the State of Texas. Dkt. No. 1 at 3. Fox asserts claims against Lumpkin, Bundy, Collier, and Abbott in their official and

individual capacities for the alleged implementation of unconstitutional policies.[1] Dkt. No. 11 at 8–9, 11. Fox also claims that Bundy and Collier failed to properly train staff on how to mitigate the spread of COVID-19. *Id.* at 9, 11.

Fox claims that Defendants placed him in "harm's way" through possible exposure to COVID-19, which caused him to suffer "mental anguish." Dkt. No. 1 at 4. Fox asks the Court for: (1) compassionate medical release, parole, or the commutation of his sentence; (2) ten million dollars for mental anguish; and (3) an injunction for the implementation of safety procedures "to prevent future exposure of COVID-19." *Id.*

A.  Official capacity claims

Fox's allegations can be construed as seeking both monetary damages and injunctive relief from Defendants. Dkt. No. 1 at 3; Dkt. No. 11 at 12. Specifically, Fox asks for ten million dollars for "future medical costs [and] future mental services [for] the mental anguish" as well as injunctive relief through "immediate release" or parole, and a review of TDCJ procedure "to prevent future exposure of covid 19." Dkt. No. 1 at 4; Dkt. No. 11 at 12.

   1. *Monetary relief*

Claims against a state official in their official capacity are, in effect, claims against the state itself or the government agency that employs the official, making a claim against the official no different than a claim against the state itself. *Will v. Mich. Dep't of State*

---

[1] In the Magistrate Judge's Questionnaire, Fox states that he asserts his claims against Lumpkin, Bundy, and Collier in their official capacity and against Abbott in his individual capacity. Dkt. No. 11 at 8–11. However, because Fox appears to seek both money damages and injunctive relief against each Defendant, the Court construes Fox's allegations as official and individual capacity claims against all Defendants.

*Police*, 491 U.S. 58, 71 (1989). And the Eleventh Amendment bars suits against a nonconsenting state in federal court for monetary damages. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984). Thus, by extension, the Eleventh Amendment also bars suits for money damages against a state official in their official capacity because the state is the "real, substantial party in interest." *Hughes v. Savell*, 902 F.2d 376, 377–78 (5th Cir. 1990) (quoting *Ford Motor Co. v. Dept. of Treasury of Ind.*, 323 U.S. 459, 464 (1945)).

For these reasons, the undersigned finds that the Eleventh Amendment bars Fox's claim for money damages against Defendants in their official capacities and RECOMMENDS that these claims be DISMISSED with prejudice as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. §1915A(b)(1).

*2. Injunctive relief*

Fox seeks injunctive relief in the form of his release from prison as well as a review of TDCJ COVID-19 policies. "'Under *Ex parte Young*, a case can proceed against individual state officials named in their official capacities when the claim is for an ongoing violation of federal law,'" provided the relief sought is prospective in nature. *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (quoting *Daves v. Dallas Cnty.*, 984 F.3d 381, 397 (5th Cir. 2020)). Although Fox seeks relief that is prospective in nature, the undersigned now explains why Fox cannot seek injunctive relief when he fails to allege an ongoing violation of federal law.

    a. <u>Release from prison</u>

To the extent Fox seeks his release from prison in connection with his Section 1983 condition-of-confinement claim, "[r]elease from imprisonment . . . is an inappropriate

6

remedy in an action brought pursuant to 42 U.S.C. § 1983." *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 801 (N.D. Tex. Mar. 28, 2005) (citing *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974)); *see also Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) ("§ 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures[,] . . . [a] habeas petition . . . is the proper vehicle to seek release from custody."); *Wilson v. Dallas Cnty. Jail*, No. 3:20-cv-02792-C (BT), 2022 WL 1176749, at *3 (N.D. Tex. Mar. 16, 2022) *report and recommendation adopted*, 2022 WL 1173802 (Apr. 20, 2022).

For these reasons, the undersigned finds that Fox cannot seek his release from his prison in this lawsuit and RECOMMENDS that these claims be DISMISSED with prejudice as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. §1915A(b)(1).

### b. Review of TDCJ COVID-19 policies

The Court now addresses Fox's claim for an injunction to review the COVID-19 policies to "prevent future exposure of covid 19." Dkt. No. 1 at 4.

"An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). A party seeking a preliminary injunction or temporary restraining order must prove four elements:

1. a substantial likelihood of success on the merits of their case;
2. a substantial threat that the Plaintiff will suffer irreparable injury;

   3. that the threatened injury outweighs any harm that the injunctive order might cause the Defendant; and
   4. that the injunction is in the public interest.

*Women's Med. Ctr. v. Bell*, 248 F.3d 411, 419, n.15 (5th Cir. 2001).

Injunctive relief will be denied if the movant fails to prove any of these four elements. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). The Prison Litigation Reform Act (PLRA) also limits the authority of federal courts to grant injunctions in cases concerning prison conditions. With respect to prison conditions, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. 3626(a)(2). Courts must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id*. In the prison context, courts should exercise great caution when considering injunctive relief. *Bell v. Wolfish*, 441 U.S. 520, 547–48, 562 (1979) (recognizing the wide-ranging deference given to prison administrators to maintain institutional security and warning courts against becoming "enmeshed in the minutiae of prison operations").

Fox has failed to satisfy any of the elements required for injunctive relief. To support a request for equitable relief, a party must state a viable "underlying cause of action," which Fox fails to do. *See Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015). As discussed in greater detail below, the Court does not find it plausible on the facts alleged that, under the Eighth Amendment's deliberate indifference standard, Defendants recklessly

8

responded to the risks posed by COVID-19 or subjectively knew at the time that the policies that Fox complains of posed a substantial risk to inmate safety. Fox has also failed to allege facts that he will suffer irreparable injury unless his injunction is granted, how any threatened injury outweighs any burden an injunction would impose on Defendants, or why his injunction would be in the public's interest.

For these reasons, the undersigned finds that Fox cannot satisfy the elements required for injunctive relief and RECOMMENDS that these claims be DISMISSED with prejudice as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. §1915A(b)(1).

B.  Individual capacity claims against supervisors

As explained above, Fox's remaining claims seek money damages against Defendants in their individual capacities because Fox alleges that each Defendant personally implemented unconstitutional policies. *See* Dkt. No. 11 at 8–11.

Because personal involvement is an essential element of a Section 1983 claim, liability of a supervisor cannot be based solely on the conduct of their subordinates. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Supervisory officials may be held liable under Section 1983 for constitutional violations committed by subordinates only if: (1) the supervisor affirmatively participated in the acts that caused the constitutional deprivation; or (2) implemented unconstitutional policies that causally result in a constitutional injury. *Porter v. Epps*, 659 F.3d 440, 445–46 (5th Cir. 2011). "[A] supervisor may be held liable if he is not personally involved only if the supervisory official implements a policy 'so deficient that the policy is itself is a repudiation of constitutional

9

rights and is the moving force of the constitutional violation.'" *Carter v. Livingston*, No. 9:17-cv-40, 2021 WL 836865, at *8 (E.D. Tex. Jan. 20, 2021) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

Fox does not allege that Defendants personally and affirmatively participated in the violation of his constitutional rights. *See* Dkt. No. 11 at 8–11. Instead, Fox argues that Defendants implemented unconstitutional policies by failing to prevent his exposure to COVID-19. *See* Dkt. No. 1 at 3.

1. *Personally implemented*

Fox claims that each Defendant personally implemented unconstitutional policies concerning COVID-19. *See id.* The Court asked Fox through the Magistrate Judge's Questionnaire to identify facts to support his claim that Defendants implemented an unconstitutional policy. *See* Dkt. No. 11. Fox replied that Lumpkin: (1) "did not [e]nforce proper PPE or proper sanitization"; (2) that Bundy "did not follow or enforce proper PPE or proper sanitization for his staff"; (3) that Collier did not provide adequate housing and ventilation and ensure that "staff was not properly trained or forced to follow proper PPE or proper sanitization"; and (4) that Abbott allowed TDCJ "to mix positive [and] negative" inmates together. Dkt. No. 11 at 8–11. The undersigned construes Fox's pleadings as an allegation that TDCJ implemented policies that failed to protect inmates from COVID-19 by providing inadequate PPE, sanitization, housing, and ventilation. The Court also construes Fox's pleadings as an allegation that Defendants implemented a policy of allowing Unit staff to disregard PPE and sanitization policies.

Even if the Court assumes the TDCJ and Middleton Unit's initial responses to the

COVID-19 pandemic were deficient, the Court cannot infer that TDCJ Defendants or Abbott were personally responsible for those responses solely because they were supervisors. *See Thompson*, 709 F.2d at 382; *Fields v. Davis*, No. 6:20cv423, 2022 WL 818746, at *4–6 (E.D. Tex. Feb. 24, 2022) (finding that Plaintiff's supervisory claims against the Warden and Assistant Warden for their initial response to containing COVID-19 was nothing more than an inference "that because [the] Defendants held supervisory roles, then *ipso facto* they must be liable.") *report and recommendation adopted*, 2022 WL 811053 (Mar. 16, 2022). This is particularly true in the context of TDCJ's COVID-19 policies, which the Fifth Circuit Court of Appeals has recently observed was formulated— and frequently updated and revised—by the Correctional Managed Health Care Committee (CMHCC), not the Director of TDCJ-CID, the TDCJ wardens, or the governor. *See Valentine,* 993 F.3d at 278–79.

Fox's inability to allege facts that plausibly show that Defendants personally implemented the policies he complains of demonstrates that Fox has failed to state a claim. And the Court is not required to accept Fox's unsupported conclusion that Defendants personally implemented unconstitutional policies. *See Chhim*, 836 F.3d at 469. But the Court addresses the constitutionality of the purported policies as well.

2. *An unconstitutional policy*

Even if the Court were to assume that Defendants personally implemented the COVID-19 policies that Fox complains of, he cannot demonstrate the Defendants were deliberately indifferent to his health and safety.

The Eighth Amendment "prohibits conditions that pose an unreasonable risk to a prisoner's health and safety." *Green v. Richardson*, No. H-20-1731, 2021 WL 3713061, at *5 (S.D. Tex. Aug. 20, 2021). An inmate seeking to establish an Eighth Amendment violation must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (emphasis in original))). "Deliberate indifference" means that the inadequate conditions or denial of medical treatment was "much more likely than not to result in serious medical consequences, and additionally that the defendants had sufficient knowledge of the situation so that the denial of medical care constituted wanton disregard of the prisoner's rights." *Johnson v. Treen*, 759 F.2d 1231, 1238 (5th Cir. 1985).

To successfully claim a deliberate indifference to medical needs, a plaintiff must satisfy both an objective and subjective test. *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013). An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). The prison staff must have engaged in conduct that shows "a wanton disregard for any serious medical needs." *Treen*, 759 F.2d at 1238.

With these standards in mind, the undersigned addresses each of the policies or practices that Fox believes violated his rights.

a. Inmate COVID-19 policies

Fox claims that Defendants did not provide inmates with adequate PPE, sanitization materials, housing, and ventilation. *See* Dkt. No. 11 at 5, 8–11. Fox states that inmates did not receive adequate PPE because they were only issued a "thin cloth mask" and were not given gloves. *Id.* at 5. Fox states that sanitization materials were insufficient because they were not given hand sanitizer and were only provided "a little bit of bleach" but states that the bleach was "mainly water" because it was so diluted. *Id.* Fox also states that inmates are subjected to the "same ventilation." *Id.* Lastly, Fox claims that his housing was inadequate because inmates who tested positive for COVID-19 were not separated from inmates who tested negative. *Id.*

Fox's allegations fail to demonstrate that TDCJ or the Middleton Unit were deliberately indifferent to his health and safety, because Fox's allegations taken as true, do not support the conclusion that Defendants consciously disregarded a risk of serious harm. Although Fox believes that Defendants should have issued him gloves and hand sanitizer,

13

provided different ventilation, and quarantined infected inmates, these allegations only amount to a disagreement with the actions taken by Defendants. *See Norton*, 122 F.3d at 292. Instead, Fox's allegations demonstrate that Defendants attempted to take action to prevent the spread of COVID-19 by issuing inmates cloth masks and some bleach to protect themselves from COVID-19, as well as testing inmates for COVID-19. Dkt. No. 11 at 5; Dkt. No. 1 at 4.

Accordingly, Fox's factual allegations are insufficient to plausibly support the conclusion that the "policies" allegedly implemented by Defendants constituted a wanton or reckless response to the then-known risks posed by COVID-19, or that Defendants subjectively knew at the time of substantial risks to inmate safety posed by the implemented policies, yet deliberately or recklessly failed to respond to those risks. *See Valentine*, 993 F.3d at 279–282 (reversing a preliminary injunction because inmates were not likely to succeed on the merits of a deliberate indifference claim seeking to require a prison to provide inmates with gloves, to provide a plan for regular cleaning of common surfaces with bleach, and to quarantine inmates awaiting COVID-19 test results from inmates who tested negative). Accordingly, Defendants failure to provide Fox hand sanitizer, gloves, and a different ventilation system do not amount to an unconstitutional policy on the facts as alleged.

    b. <u>Prison Employees—Proper PPE or sanitization</u>

Fox claims that Bundy "knowingly [and] intentionally allow[ed] staff to not properly sanitize themselves" and did not enforce "proper PPE." Dkt. No. 11 at 5, 9. However, Fox's allegation is devoid of any facts explaining how staff failed to follow PPE

and sanitization policies. *See id.* And while it may be conceivable that staff members did not wear proper PPE and were improperly sanitized, Fox fails to provide facts that allows the Court "to infer more than the mere possibility of misconduct." *See Huggins Realty, Inc.*, 634 F.3d at 796 (quoting *Iqbal*, 556 U.S. at 678–79). Moreover, Fox cannot show that the manner in which the staff managed PPE and sanitization posed an objective risk of serious harm to him. *See Valentine*, 993 F.3d at 282.

3. *Caused a constitutional injury*

For the reasons explained above, Fox has not suffered a constitutional injury required for a supervisory liability claim because Defendants were not deliberately indifferent to his serious medical needs. *See Porter*, 659 F.3d at 440. And even if the Court assumes that Defendants personally implemented constitutionally deficient policies in response to the COVID-19 pandemic, Fox could not recover money damages against Defendants because the PLRA prohibits "compensatory damages for mental or emotional injuries . . . absent physical injury." *Geiger*, 404 F.3d at 375. Thus, Fox cannot recover for "mental anguish" when he never contracted COVID-19. Dkt. No. 11 at 2, 12.

For these reasons, the undersigned finds that Fox has failed to allege a plausible claim against Defendants in their individual capacities and RECOMMENDS that these claims be DISMISSED with prejudice as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. §1915A(b)(1).

C. <u>Failure to Train</u>

The above analysis is equally fatal to any failure-to-train claim by Fox against Bundy and Collier. Fox alleges, briefly, that Bundy and Collier are liable in their

15

supervisory capacities for failing to train staff. Dkt. No. 11 at 9, 11. This claim is alleged in Fox's response to the Magistrate Judge's Questionnaire that required Fox to state all facts to support his claim that Defendants implemented unconstitutional policies, to which Fox responded that Bundy and Collier violated his rights because staff "was not properly trained." *Id.*

A plaintiff "cannot state a policy claim—based on failure to train or any other basis" if they "cannot establish that Defendants were aware of a 'substantial risk of significantly unmet serious medical needs' but 'failed to properly attempt to correct it,' and that defendants' 'action or inaction in this respect caused his injuries.'" *May v. McLane*, No. 5:21-CV-271-BQ, 2022 WL 4353562, at *10 (N.D. Tex. Aug. 8, 2022) (quoting *Thompkins*, 828 F.2d at 304). To have a claim based on failure to train and/or supervise a plaintiff must plead facts showing that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the Plaintiff's rights; and (3) the failure to train or supervise amounted to deliberate indifference." *Jones v. Dickerson*, No. H-19-3876, 2020 WL 6504456, at *6 (S.D. Tex. Nov. 5, 2020) (citing *Gates v. Tex. Dept. of Protective and Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

Fox's statement that Defendants enacted an unconstitutional policy because "staff was not properly trained" is insufficient to show any of the elements for a failure to train claim. *See* Dkt. No. 11 at 9, 11. Fox's allegations here are conclusory and fail to provide sufficient information to support the elements of a failure-to-train claim. And as stated above, the policies Fox complains of did not violate his constitutional rights or otherwise

16

cause him actionable harm. Thus, it is not feasible to have a causal link between any failure to train or supervise claim and a violation of Fox's rights. *See Jones*, 2020 WL 6504456, at *6.

For these reasons, the undersigned finds that Fox has failed to allege a plausible claim against Bundy and Collier for failure to train and RECOMMENDS that these claims be DISMISSED with prejudice as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. §1915A(b)(1).

## V.  CONCLUSION

For the reasons explained in these Findings, Conclusions, and Recommendations, the undersigned RECOMMENDS that all of Fox's claims be dismissed with prejudice for frivolousness and failure to state a claim.

## VI.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal

conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VII.  TRANSFER OF CASE

Having completed the preliminary screening of Fox's claims under 28 U.S.C. §1915(e)(2) and 28 U.S.C. § 1915A, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1:21-cv-00029-H.

ORDERED this 26th day of May, 2023.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE